**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

JONES LANG LASALLE AMERICAS, INC.,

                Plaintiff,

v.

CYPRESS INTERNATIONAL, INC.,

                Defendant.

Case No. _____

## COMPLAINT

Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL"), by and through its undersigned attorney, hereby brings this Complaint and seeks recovery from Defendant Cypress International, Inc. ("Cypress"), for unjust enrichment and conversion. In support of its Complaint, JLL states and alleges as follows:

## INTRODUCTION

1. This is an action for restitution arising from Defendant Cypress's unjust retention of a mistaken payment made by Plaintiff JLL. Cypress knowingly accepted and retained JLL's mistaken payment under circumstances that make its continued retention inequitable and unjust. Despite repeated notices that the payment was a mistake, Cypress refuses to return the funds to JLL.

1

**PARTIES**

2.      Plaintiff JLL is a Maryland corporation with its corporate headquarters and principal place of business at 200 East Randolph Drive, Chicago, Illinois 60601.

3.      Upon information and belief, Defendant Cypress is a Virginia corporation with its corporate headquarters and principal place of business at 66 Canal Center Plaza, Suite 600, Alexandria, Virginia 22314.

**JURISDICTION AND VENUE**

4.      This Court possesses jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1332(a), as the amount in controversy is in excess of $75,000 and complete diversity exists between Plaintiff and Defendant.

5.      This Court possesses personal jurisdiction over Defendant Cypress because it is a citizen of Virginia with its principal place of business in Alexandria, Virginia.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), (d).  Defendant Cypress is a resident of Virginia and resides in this District. Additionally, a substantial part of the events or omissions giving rise to JLL's claims occurred in this judicial district.

**GENERAL ALLEGATIONS**

7.      On December 20, 2022, Cypress entered into a lease agreement with Liberty 66 Canal, LLC ("Opal").

8.      In February 2023, Cypress engaged JLL, pursuant to a written Project Management Services Agreement, to act as Cypress's project manager for the build-out of Cypress's new office space at 66 Canal Center Plaza, Suite 600, Alexandria, Virginia (the "Project").

2

4913-4394-8948 v6

9.      JLL was not a party to Cypress's lease for the Project premises and was not Cypress's landlord. JLL had no contractual obligation to fund Cypress's tenant improvements and no contractual obligation to make any tenant improvement payments to Cypress.

10.     Per its agreements with Cypress, Opal placed funds in an escrow account to be used by Cypress for tenant improvements to the Project premises. The tenant improvement funds were to be disbursed to Cypress through an escrow arrangement administered by Nussbaum Lowinger LLP (the "Escrow Agent"). Each payment disbursed from the escrow account was designated as a "Draw."

11.     The Escrow Agent was responsible for disbursing tenant improvement funds to Cypress in accordance with draw requests approved by Cypress.

12.     As agreed upon by Cypress and Opal, Cypress was to use each draw to directly pay vendors for work on the Project premises.

13.     JLL's role was limited to project management and coordination, including the submission of Cypress-approved draw requests to the Escrow Agent. JLL was never intended nor entitled to receive tenant improvement funds for payment of vendors.  At all times, Cypress was intended to pay all of its debts and obligations.

14.     In May 2024, JLL submitted the eighth Cypress-approved  tenant improvement draw request ("Draw #8") to the Escrow Agent as part of the Project.

15.     On or about July 10, 2024, in connection with Draw #8, the Escrow Agent mistakenly transmitted the full draw amount, $498,189.97, to JLL instead of disbursing the funds to Cypress.

3

16.     In an effort to correct the Escrow Agent's error and ensure Cypress's ability to pay vendors without delay, JLL transmitted $494,295.53 (the total amount minus fees owed to JLL) to Cypress on or about July 17, 2024.

17.     JLL sent these funds to Cypress solely to facilitate Cypress' timely payment to vendors and to mitigate disruption to the Project—not because JLL owed Cypress any money.

18.     Realizing the error, the Escrow Agent separately recalled the July 10, 2024 payment from JLL back to the Escrow Account on or about July 12, 2024.

19.     Upon information and belief, the Escrow Agent transmitted $494,260.53 directly to Cypress on or about July 19, 2024 in satisfaction of the Draw #8 tenant improvement draw request.

20.     As a result, Cypress received two separate wire transfers totaling of $988,556.06 for Draw #8, but only $494,260.53 actually came from the Escrow Account.

21.     Cypress was not entitled to retain the funds sent by JLL under any contract, lease, escrow agreement, or other legal obligation.

22.     After the duplicate payment was recognized, JLL notified Cypress in June 2025 that Cypress had received a duplicate payment for Draw #8 and requested reimbursement of the mistakenly transmitted funds.

23.     The Escrow Agent confirmed that Cypress received a double payment for the same tenant improvement draw (Draw #8).

24.     JLL provided Cypress with documentation demonstrating the two payments to Cypress, including records showing JLL transmitted $494,295.53 to Cypress and that the Escrow Agent separately transmitted funds for the same draw.

4

4913-4394-8948 v6

25. Cypress knew or should have known that JLL's payment was duplicative and that JLL had no obligation, contractual or otherwise, to fund Cypress's tenant improvements.

26. Cypress acknowledged receipt of JLL's payment, but denied receiving duplicate payments for Draw #8.

27. Based upon information disclosed by Cypress, the tenant improvement project did not exhaust the funds in the Escrow Account. As a result, excess funds from the Escrow Account, including the funds recalled from JLL, were credited to Cypress as lease abatement. Cypress applied these excess funds to lease abatement unilaterally and without any agreement, authorization, or consent from JLL.

28. JLL is not a party to Cypress's lease and did not agree that funds mistakenly paid by JLL could be converted into lease credits or abatements.

29. Cypress's unilateral decision to apply or characterize the duplicate payment received from JLL as a lease abatement did not extinguish Cypress's obligation to return funds to which it had no legal or equitable entitlement.

30. Despite repeated written demands, Cypress has not returned the funds JLL mistakenly transmitted. JLL's outreach to Cypress included a phone call on or about September 11, 2024, emails requesting the funds be returned on or about June 10, 2025 and November 18, 2025, and a demand letter sent on behalf of JLL by outside counsel on or about January 16, 2026.

31. Cypress continues to retain the $494,295.53 that was mistakenly paid by JLL and to which Cypress has no contractual or equitable entitlement.

32. Cypress's retention of these funds, including through asserted lease abatements, deprived JLL of its funds and conferred an unjust benefit upon Cypress.

4913-4394-8948 v6

## COUNT I: UNJUST ENRICHMENT

33.     Plaintiff JLL incorporates by reference each and every allegation contained in the above paragraphs.

34.     There is no contract between Plaintiff JLL and Defendant Cypress that covers the subject matter of this dispute.

35.     On or about July 17, 2024, Plaintiff JLL, at its own expense, sent Defendant Cypress $494,295.53 via wire transfer.

36.     Defendant Cypress accepted and retained that benefit.

37.     Defendant Cypress was enriched by the virtue of Plaintiff JLL providing Defendant Cypress with $494,295.53.

38.     Defendant Cypress was aware and had knowledge that Plaintiff JLL was not providing the benefit gratuitously and that the benefit had value.

39.     Plaintiff JLL has repeatedly demanded that Defendant Cypress return the $494,295.53. Defendant Cypress refuses to do so.

40.     Defendant Cypress has accepted and retained the benefit inequitably and at Plaintiff JLL's expense.

41.     Plaintiff JLL and Defendant Cypress had a sufficiently close relationship or connection as to cause reliance or inducement by Plaintiff JLL.

42.     As a result of Defendant Cypress's retention of the $494,295.53, Plaintiff JLL has suffered actual and significant damages.

43.     For all the reasons set out above, it is against equity and good conscience to permit Defendant Cypress to retain the $494,295.53 that Plaintiff JLL provided.

6

WHEREFORE JLL requests entry of judgment in its favor and against Cypress in the amount of $494,295.53, in addition to legal fees, collection fees, attorneys' fees, and interest incurred.

## COUNT II: CONVERSION

44.    Plaintiff JLL incorporates by reference each and every allegation contained in the above paragraphs.

45.    At all relevant times, Plaintiff JLL was the lawful owner of, or had an immediate and superior right to possession of $494,295.53 that it mistakenly transmitted to Defendant Cypress.

46.    JLL did not owe Cypress the $494,295.53 and did not authorize Cypress to retain, disburse, or apply those funds for Cypress's own purposes.

47.    Cypress knowingly exercised dominion and control over the $494,295.53 in a manner inconsistent with JLL's rights, including by retaining the funds after receiving notice of the mistaken payment.

48.    Cypress's unilateral decision to retain, disburse, or apply JLL's funds as rent abatement constituted an unauthorized assumption of ownership and control over JLL's property.

49.    Cypress's exercise of dominion and control over the $494,295.53 deprived JLL of the use and possession of its funds.

50.    As a direct and proximate result of Cypress's conversion of JLL's funds, JLL has suffered damages in an amount no less than $494,295.53.

WHEREFORE JLL requests entry of judgment in its favor and against Cypress in the amount of $494,295.53, in addition to legal fees, collection fees, attorneys' fees, and interest incurred.

4913-4394-8948 v6

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff JLL demands judgment against Defendant Cypress in a total sum of $494,295.53, plus additional late fees, pre- and post-judgment interest, attorneys' fees, costs, disbursements and such other and as the Court may deem just, proper and equitable.

Dated: April 10, 2026                    Respectfully submitted,


                                         SHOOK, HARDY & BACON L.L.P.


                                         <u>*/s/ Frederick S. Rudesheim*</u>
                                         Frederick S. Rudesheim, VA Bar# 99649
                                         1800 K St. NW, Suite 1000
                                         Washington, DC 20006
                                         Telephone:  202-783-8400
                                         Facsimile:  202-783-4211
                                         frudesheim@shb.com

                                         *Attorney for Plaintiff JLL.*

4913-4394-8948 v6