**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| JONES LANG LASALLE AMERICAS, INC. | ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 1:26-cv-00986 |
| v. | ) ) ) | |
| CYPRESS INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT CYPRESS INTERNATIONAL, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Defendant Cypress International, Inc. ("Cypress"), by and through undersigned counsel, moves to dismiss the Complaint (Dkt. 1) filed by Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

**I.      BACKGROUND**

As alleged in JLL's Complaint, JLL served as Project Manager for the build-out of Cypress' office in connection with a new lease ("Lease") that Cypress signed with landlord Liberty 66 Canal, LLC ("Opal"). Compl. ¶¶7-8.

The Lease and its components (the amendment of March 28, 2024 and Escrow Agreement) are integral to and referenced in the Complaint. *See, e.g., id.* ¶¶7, 9-12. We thus attach copies of those documents hereto as Exhibit 1. *See Brown Goldstein Levy LLP v. Fed. Ins. Co.*, 68 F.4th 169, 174 (4th Cir. 2023) (in adjudication of Rule 12(b)(6) motion, court may consider a document that is "integral to and explicitly relied on in the complaint"); *accord Jeffrey*

*M. Brown Assocs. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202-203 (4th Cir. 2001) (*per curiam*) (explaining propriety of considering exhibits effectively integrated into complaint).

The Lease originally provided for a tenant improvement allowance plus rent abatement rights but was amended on March 28, 2024. *See* Ex. 1 at pages 45-72 (Lease Amendment). The amended Lease provided that the Landlord would: (a) increase the improvement allowance ("Improvement Allowance"), (b) place funds for the new increased Improvement Allowance into an escrow account to be managed by an Escrow Agent; (c) permit Cypress to submit draw requests ("Draw Requests") for disbursements of portions of the Improvement Allowance to pay vendors; and (d) eliminate the right of Cypress to any rent abatement. *Id.* at pages 45-48 (Lease Amendment §§4 and 5). Each Draw Request had to be accompanied and supported by approved contractor and vendor invoices for actual costs of construction, FF&E or moving actually incurred by Cypress so Cypress could in turn compensate those contractors and vendors for their services. *Id.* at page 47 (Lease Amendment §4(e)(3)). Once a Draw Request is submitted with proper documentation, then Cypress had the right to obtain payment "from the Escrow Funds pursuant to this Escrow Agreement." *Id.* at page 74 (Escrow Agreement §4(A)). The Escrow Agent is "the attorney for Landlord and may represent Landlord in any action between Landlord and Tenant relating to the Lease or this Escrow Agreement." Escrow Agreement §11. JLL's role as project manager included submitting "Cypress-approved draw requests to the Escrow Agent." Compl. ¶13.

JLL alleges that, in May 2024, it submitted Cypress-approved Draw Request #8 to the Escrow Agent. *Id.* ¶14. On July 10, 2024, the Escrow Agent then "mistakenly transmitted the full draw amount, $498,189.97, to JLL instead of disbursing the funds to Cypress." *Id.* ¶15. The Escrow Agent, upon "[r]ealizing the error," "recalled [the money] from JLL back to the Escrow

Account" two days later, on July 12, 2024.*Id.* ¶18. Notably, JLL does *not* allege that Cypress knew then that the Escrow Agent had recalled the funds.

Five days later (on July 17, 2024), JLL sent $494,295.53 to Cypress. *Id.* ¶16. JLL specifically intended for Cypress to use those funds to satisfy Draw Request #8. *Id.* ¶17 ("JLL sent these funds to Cypress solely to facilitate Cypress' timely payment to vendors and to mitigate disruption to the Project"). In fact, it is clear JLL *itself* treated those funds as Draw Request #8 because it sent $494,295.53 to Cypress rather than the full draw amount of $498,189.97, having deducted fees owed to JLL for its project management services. *Id.* ¶16. Therefore, JLL sent $494,295.53 to Cypress on July 17 with the intention and understanding that Cypress would use that money to pay the rest of the service vendors and contractors owed money pursuant to Draw Request #8. *Id.* ¶17. We will refer herein to this first tranche of money sent on July 17, 2024, as the "JLL-Transmitted Funds."

On July 19, 2024, two days after JLL sent the JLL-Transmitted Funds to Cypress so Cypress could finish satisfying Draw Request #8, the Escrow Agent sent $494,260.53 directly to Cypress. *Id.* ¶19. We will refer herein to this second tranche of money sent on July 19, 2024, as the "Escrow Agent-Transmitted Funds."

JLL alleges that the Escrow Agent-Transmitted Funds were also "in satisfaction of the Draw #8 tenant improvement draw request" but that Cypress wrongly credited those funds to rent "abatement." *Id.* ¶19, 27. JLL alleges that Cypress should not have credited the funds to rent abatement but instead should have remitted them to JLL. *Id.* ¶¶21-22.

Although the payment issue arose in July 2024, JLL claims that it did not reach out to Cypress about it until later in September 2024.*Id.* ¶30. The conversation regarding the issue continued through 2025 and ended with a demand letter in January 2026 (and then this suit). *Id.*

JLL demanded return of the money (*id.* ¶26) but Cypress "denied receiving duplicate payments for Draw #8" and "disclosed" to JLL certain "information" regarding how Cypress "applied" the "excess funds." *Id.* ¶¶27, 30.

Cypress's denials and "information" it "disclosed" to JLL as well as the June – November 2025 emails are integral to the Complaint. (*See, e.g.,* Compl. ¶¶26, 27, 30). Accordingly, we attach copies of those documents as Exhibit 2. Those emails show the following conversation:

**June 10, 2025: David Youst (JLL) email to various, including Mindy Gilbert (Cypress):**

Hello Mindy, Would you be able to review your receivables and confirm what I've outlined below, following my review of the packages and the information you provided? Reviewing these details, JLL has made an additional payment of $498,190 to Cypress in error.  JLL sent the $498K received from the escrow company to Cypress and at the same time the Escrow company recalled the funds and then sent these funds back to Cypress.  Our office should have sent the money back to the escrow company and not have forwarded to Cypress resulting in unjustly enriching Cypress.  []Let me know if you would like to set up a call to discuss.

| Package | Invoice | Packge Amoun | Payments Paid Out | | Received Funds | Overpayment | | Notes |
|---|---|---|---|---|---|---|---|---|
| Draw Package 1 | | $9,644.44 | | $9,644.44 | Cypress | GC's & Subs | | |
| Draw Package 2 | | $14,194.44 | | $14,194.44 | Cypress | GC's & Subs | | |
| Draw Package 3 | | $20,627.54 | | $20,627.54 | Cypress | GC's & Subs | | |
| Draw Package 4 | | $8,244.27 | | $8,244.27 | Cypress | GC's & Subs | | |
| Draw Package 5 | | $15,792.44 | | $15,792.44 | Cypress | GC's & Subs | | |
| Draw Package 6 | | $21,314.44 | | $21,314.44 | Cypress | GC's & Subs | | |
| Draw Package 7 | $ | 249,448.20 | $ | 249,448 | JLL to Cypress | GC's & Subs | | Deducted $3,894.44 (JLL Fee) |
| Draw Package 8 (2nd) | $ | 498,189.97 | $ | 498,190 | JLL to Escorw | GC's & Subs | | |
| 2nd Payment | | | $ | 498,190 | JLL to Cypress | $ | 498,190 | Recall 7/12/24 |
| Draw Package 9 | $ | 457,787.17 | $ | 494,261 | Cypress | $ | 36,473 | Overpaid on TI Package |
| Draw Package 10 | $ | 251,108.49 | $ | 251,108 | Cypress | GC's & Subs | | |
| Draw Package 11 | $ | 234,803.08 | $ | 234,803 | Opal to Cypress | GC's & Subs | | |
| Draw Package 12 | $ | 124,065.96 | $ | 124,066 | Opal to Cypress | GC's & Subs | | |
| Total Draws | | $1,905,220.44 | $ | 2,439,884 | | | | |
| | | | | | | | | |
| Remianing TI | $ | 306,284.20 | | | | | | |
| | | | | | | | | |
| Package 9 Overpayment | $ | 36,473.36 | | | | | | |
| Cypress Lease Amd #1* | $ | 306,284.20 | $ | 306,284 | Guesstimate | | | |
| Cypress Total TI Spent/Paid | | $2,247,978.00 | $ | 2,746,168 | | | | |
| | | | | | | | | |
| TI Allowance | $ | 2,247,978.00 | $ | 2,247,978.00 | | | | |
| | | | | | | | | |
| Remaining TI | $ | - | | | | | | |
| Overpayment (JLL) | | | $ | 498,190.00 | | | | |

**June 24, 2025: Gilbert (Cypress) to *inter alia* Youst (JLL):**

> Good Morning David,  We are doing an internal audit on the payments made but please note that we dispute any claim that Cypress has been unjustly enriched.  JLL sent the money itself which was received.  This money was due and owing under the lease at issue.  Cypress is not holding any funds that it is not contractually permitted to, other than the $36,473.36 which we have previously advised you is being held in escrow pending resolution.

**July 15, 2025: Gilbert (Cypress) to Youst (JLL):**

> Good morning David, Attached is Cypress's audit of the TI Draw Packages for our project. Please don't hesitate to reach out if you have any questions or need additional information.

**Cypress Review of TI Draw Packages**

| Package | Invoice Package Amount | Received Funds | Cypress Received Payments | Date Payments Received by Cypress | Notes |
|---|---|---|---|---|---|
| Draw Package 1 | $ 9,644.44 | | $ 9,644.44 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 2 | $ 14,194.44 | | $ 14,194.44 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 3 | $ 20,627.54 | | $ 20,627.54 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 4 | $ 8,244.27 | | $ 8,244.27 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 5 | $ 15,792.44 | | $ 15,792.44 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 6 | $ 21,314.44 | | $ 21,314.44 | n/a | Vendors paid direct by Opal/AREP |
| Draw Package 7 | $ 249,448.20 | JLL to Cypress | $ 245,553.76 | 7/10/2024 | Minus JLL Fee $3894.44 |
| Draw Package 8 | $ 498,189.97 | JLL to Cypress | $ 494,295.53 | 7/17/2024 | Minus JLL Fee $3894.44 |
| Draw Package 9 | $ 457,787.17 | Escrow to Cypress | $ 494,260.53 | 7/19/2024 | $36,473.36 credit for overpayment |
| Draw Package 10 | $ 251,108.49 | Escrow to Cypress | $ 251,108.49 | 11/13/2024 | |
| Draw Package 11 | $ 234,803.08 | Opal to Cypress | $ 234,803.08 | 1/13/2025 | |
| Draw Package 12 | $ 124,065.96 | Opal to Cypress | $ 124,065.96 | 1/13/2025 | |
| **Total Draws** | **$ 1,905,220.44** | | **$ 1,933,904.92** | | |
| | | | $ 1,905,220.44 | All payments received - minus credit and JLL paid fees with Package 7&8 | |
| Package 9 Credit | $ 36,473.36 | | | | |
| Cypress Total TI Spent/Paid | $ 1,905,220.44 | | | | |
| TI Allowance | $ 2,247,978.00 | | | | |
| Remaining TI | $ 379,230.92 | | | | |

**August 15, 2025: Youst (JLL) to Gilbert (Cypress):**

> Mindy, Apologies for my tardiness here.  The remaining TI's make sense here with the $494K funds JLL mistakenly sent to Cypress.  Do you have timing on when Cypress is pulling the remaining funds from Escrow and sending the $494K reimbursement back to JLL finance?

> These emails demonstrate that JLL knew that Cypress did not apply any of the Escrow

Agent-Transmitted Funds to "lease abatement" but that Cypress in fact used those funds for their

intended purpose under the Lease – to pay all of the build-out contractors and vendors against invoices (for Draw Request #9). The emails also demonstrate JLL's knowledge that Cypress's payments to vendors tie out to the penny and that Cypress is not in possession of any excess funds (other than the $36,473.36 overage). Finally, the emails demonstrate JLL's express understanding and agreement that the payments "make sense" and that reimbursement properly should come from remaining Escrow Funds, *not* from Cypress.

Nonetheless, JLL now alleges that Cypress has no contractual or equitable right to retain the original JLL-Transmitted Funds, and that Cypress accordingly has been unjustly enriched, or alternatively has converted the money. This Court should dismiss the Complaint in its entirety, however, for failure to state a claim upon which relief can be granted.

## II.    LEGAL STANDARD

Under the familiar Rule 12(b)(6) rubric, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Brown Goldstein Levy*, 68 F.4th at 174 (internal citations and quotation marks omitted). Although the Court should assume well-pled factual allegations in a complaint to be true, and draw all reasonable inferences in plaintiff's favor, the Court "need not accept any unwarranted inferences or unreasonable conclusions." *David v. Winchester Med. Ctr.*, 759 Fed. Appx. 166, 168 (4th Cir. 2019) (*per curiam*) (citing and quoting *Hamilton v. Pallozzi*, 848 F.3d 614, 620 (4th Cir. 2017)) (internal quotations marks omitted); *accord Jeffrey M. Brown*, 7 Fed. Appx. at 202.

While courts generally do not consider extrinsic evidence on a Rule 12(b)(6) motion, "when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *David*, 759 Fed. Appx. at 168

(internal quotation marks and citations omitted). *Accord Philips v. Pitt Cnty. Mem'l Hosp.*, 572

F.3d 176, 180 (4th Cir. 2009) ("We may also consider documents…attached to the motion to

dismiss, so long as they are integral to the complaint and authentic"). If a conflict exists

"between the bare allegations of the complaint and any exhibit attached, then the exhibit

prevails." *David*, 759 Fed. Appx. at 168 (citing and quoting *Goines v. Valley Cmty. Servs. Bd.*,

822 F.3d 159, 166 (4th Cir. 2016)) (internal quotation marks omitted).

### III.    ARGUMENT

#### A.  JLL Fails to State a Claim for Unjust Enrichment Under Virginia Law

This matter arrives in federal court on diversity jurisdiction; hence, the state law of

Virginia governs the substantive causes of action. *Brown Goldstein Levy*, 68 F.4th at 174.

Virginia has adopted a three-part test governing unjust enrichment claims. A plaintiff

must allege that (1) it conferred a benefit on the defendant; (2) who knew of the benefit and

should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained

the benefit without paying for its value. *James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582,

597 (Va. 2020). *Accord Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165-66 (4th Cir. 2012).

JLL fails to meet these elements on several grounds.

#### 1.  Regarding the JLL-Transmitted Funds, JLL Fails to Satisfy Element 2

JLL's claim to recover the JLL-Transmitted Funds fails because JLL did not and cannot

allege facts in support of the second element of an unjust enrichment claim. That element does

not focus on *plaintiff's* expectation of repayment. Rather, it looks to whether plaintiff has alleged

facts to establish that the *party who received the benefit* knew that plaintiff provided the benefit

and reasonably expected to repay plaintiff for it. *See McCarthy Bldg. Cos. v. TPE Va. Land

Holdings, LLC*, 2021 U.S. Dist. LEXIS 43937, at *11-13 (W.D. Va. Mar. 9, 2021) (citing Virginia

case law and so holding). *See also Rosetta Stone*, 676 F.3d at 166 (affirming dismissal of unjust enrichment claim because plaintiff failed to allege actual facts – as opposed to bare allegations – showing plaintiff conferred a benefit on Google for which Google reasonably should have expected to pay plaintiff).

Here, JLL alleges no facts to show that Cypress knew JLL (rather than Escrow Agent) was conferring the benefit (the funds for Draw Request #8) and should reasonably have expected to repay JLL. JLL alleges it sent the JLL-Transmitted Funds to Cypress specifically with the intent that Cypress would use those funds to satisfy Draw Request #8. Compl. ¶¶16-17. In JLL's words, it "sent these funds to Cypress solely to facilitate Cypress' timely payment to vendors and to mitigate disruption to the Project" *Id.* ¶17. In fact, JLL *itself* treated the funds as money to satisfy Draw Request #8. It subtracted from the total ($498,189.97) the amount that JLL was owed for project management services before voluntarily sending the remainder of the funds ($494,295.53) to Cypress to satisfy Draw Request #8. *Id.* ¶16.

Moreover, JLL does not allege Cypress knew at that time that the Escrow Agent had, on July 12, recalled the funds it had sent to JLL on July 10. Therefore, on JLL's allegations, so far as Cypress knew, the funds Cypress received from JLL on July 17 were those to which it was entitled pursuant to the Lease and Draw Request #8. Under JLL's own allegations, Cypress received funds for Draw Request #8 it did *not* have to repay to JLL but which Cypress was to use for downstream payment to vendors. *Id.* ¶¶16-17. Element two of the unjust enrichment test is therefore not met to the extent JLL seeks recovery of the JLL-Transmitted Funds.

### 2. Regarding the Escrow Agent-Transmitted Funds, JLL Fails to State a Claim Because It Never Had a Property Interest in Those Funds

While JLL purports to seek to recover the JLL-Transmitted Funds, its claim in fact focuses on the *second* tranche of funds, the Escrow Agent-Transmitted Funds. JLL cannot seek to

recover the Escrow Agent-Transmitted Funds, however, because it never had a property interest in them. For a plaintiff "to prevail on a claim for unjust enrichment, [it] must possess a property right in the funds." *Shenandoah Assocs. L.P. v. Tirana*, 182 F. Supp. 2d 14, 24 (D.D.C. 2001).

JLL alleges the tranche of monies Cypress wrongfully retained were the *Escrow Agent-Transmitted Funds*, not the JLL-Transmitted Funds. *See* Compl. ¶27 ("excess funds from the Escrow Account…were credited to Cypress as lease abatement"). JLL cannot state a claim to recover the Escrow Agent-Transmitted Funds because JLL did not and could not confer any benefit upon Cypress with funds in which it never had a possessory or ownership interest. *See Shenandoah Assocs.*, 182 F. Supp. 2d at 24-25 (dismissing unjust enrichment claim because plaintiff had no property right in money paid from defendant company's general operating account to an attorney to pay the attorney's legal bill).

Here, JLL alleges the *Escrow Agent* transmitted the Escrow Agent-Transmitted Funds "directly" from the escrow account to Cypress. Compl. ¶19. *See also id.* ¶27 Those funds never were possessed by JLL, and JLL at no time owned the Escrow Agent-Transmitted Funds. *A fortiori*, JLL did not confer any benefit upon Cypress when the Escrow Agent directly transmitted funds to Cypress. On this basis too, JLL's claim for unjust enrichment must fail.

### 3. Documents Referenced in the Complaint Contradict Its Allegations that Cypress Applied Funds to Rent Abatement and Demonstrate that Cypress Experienced No Unjust Enrichment

In addition, JLL's claim for unjust enrichment fails because integral documents referenced in the Complaint demonstrate conclusively that, contrary to the Complaint's allegations, Cypress was not unjustly enriched.

JLL alleges that Cypress experienced unjust enrichment because "excess funds…were credited to Cypress as lease abatement." Compl. ¶27. The Lease's plain terms demonstrate,

however, that, as of March 2024, when the Lease was amended, Cypress as tenant would receive *no* rent abatement. *See* Ex. 1 at page 48 (Lease Amendment §5). Instead, the Lease entitled Cypress only to a tenant Improvement Allowance against actual costs reflected in contractor and vendor invoices. Although a conflict exists between the Complaint's allegations and the Lease terms, the Lease prevails. *See David*, 759 Fed. Appx. at 168; *Goines*, 822 F.3d at 166.

Moreover, as Exhibit 2 reveals, the funds were – as Cypress informed JLL – in fact applied to Draw Request #9. *See* Exhibit 2. In its July 2025 emails to JLL, Cypress denied receipt of duplicate payments and provided information (an audit) to JLL regarding application of the funds. Those emails and audit demonstrate that when it received the JLL-Transmitted Funds, Cypress did exactly as it was contractually obligated to do – it applied the funds to Draw Request #8. Then, when the Escrow Agent sent the Escrow Agent-Transmitted Funds ($494,295.53) a few days later, Cypress did not apply those funds to Draw Request #8. It could not – that Draw Request was already satisfied. Cypress therefore, and pursuant to the applicable contracts, applied $457,787.17 of the Escrow Agent-Transmitted Funds to Draw Request #9 and held the overage ($36,473.36). *See* Ex. 2. JLL acknowledged in its August 2025 email that the payments "make sense" and reimbursement properly should come from remaining Escrow Funds. *Id.* Cypress accordingly experienced zero unjust enrichment.

## B. JLL Fails to State a Claim for Conversion Under Virginia Law

Under Virginia law, a conversion claim requires plaintiff to plead: (1) ownership or right of possession at the time of conversion, and (2) the defendant wrongfully exercised dominion or control over the property, depriving the plaintiff of possession. *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. Appx. 256, 266 (4th Cir. 2016).

### 1. Regarding the JLL-Transmitted Funds, JLL Fails to Satisfy Element 2

JLL cannot satisfy the second element of the test for conversion because it fails to allege that Cypress wrongfully exercised dominion over the funds.

"A plaintiff cannot satisfy the second prong [of the conversion cause of action] where he has consented to the use of the subject property." *Devil's Advocate*, 666 Fed. Appx. at 266. Here, JLL alleges that it "sent these funds to Cypress solely to facilitate Cypress' timely payment to vendors and to mitigate disruption to the Project" Compl. ¶17. That is, JLL *specifically intended* for Cypress to use the JLL-Transmitted Funds in satisfaction of Draw Request #8. And, as noted *supra*, JLL *itself* treated the funds as if they were in satisfaction of Draw Request #8, having subtracted from the total the monies that JLL was owed for project management services before sending the remainder of the money to Cypress to finish satisfying Draw Request #8.*Id.* ¶¶16-17. Again, there is no allegation Cypress knew then that the Escrow Agent had recalled the funds from JLL on July 12.

Because JLL consented to Cypress's use of the JLL-Transmitted Funds to satisfy Draw Request #8 when those funds were transmitted in July 2024, JLL now fails to state a claim for conversion against Cypress. *See Devil's Advocate*, 666 Fed. Appx. at 266.

### 2. Regarding the Escrow Agent-Transmitted Funds, JLL Fails to State a Claim Because It Never Had a Property Interest in those Funds

As noted *supra*, while JLL purports to seek to recover the *JLL-Transmitted Funds*, its allegations suggest that it actually seeks recovery of the *Escrow Agent-Transmitted Funds*. Indeed, JLL alleges that Cypress wrongfully applied the second tranche of money, the *Escrow Agent-Transmitted Funds* to rent abatement. Compl. ¶27.

We demonstrated *supra* why, based on the Lease and communications referenced in and integral to JLL's Complaint, Cypress applied no funds to rent abatement. But in any event, JLL

cannot state a claim to recover the Escrow Agent-Transmitted Funds because – by JLL's own allegations – JLL did not have a property right to funds transmitted directly by the Escrow Agent to Cypress. Where a plaintiff does not possess a property right in the funds at issue, it fails to state a claim for conversion. *See Shenandoah Assocs.*, 182 F. Supp. 2d at 24. *See also Jeffrey M. Brown Assocs. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 206 (4th Cir. 2001) (finding under Maryland law – which mirrors Virginia law[1] – that plaintiff failed to allege an ownership or possessory interest in funds; hence there could have been no wrongful conversion of same).

### C.  JLL Should Seek Recompense from Opal, not Cypress

To the extent JLL is out of pocket for funds that should have been paid by the Landlord (via the Escrow Funds), any claim for those funds should be brought against Opal, not Cypress.

The *Shenandoah Associates* case is apposite. There, a management company hired an attorney to represent it in connection with the company's management of various properties owned by partnerships. 182 F. Supp. 2d at 17. The management company managed an account for the partnership to manage buildings owned by the partnerships. *Id.* After the partnerships terminated their contract with the management company, the attorney recommended that the company transfer the account funds to the company's general account and use those funds to pay his legal bill. *Id.* at 18. The partnerships sued the attorney for unjust enrichment. The court held, however, that the partnerships failed to state a claim against the attorney because the attorney simply received payment (from the company's general account) for services he had in fact rendered pursuant to an existing agreement. *Id.* at 24-25.

---

[1] *See Akins v. Fair Acquisitions, LLC*, 2021 U.S. Dist. LEXIS 65201, at *14 n.6 (E.D. Va. Mar. 26, 2021) ("Virginia law dictates the same result because Virginia's elements for conversion mirror Maryland's").

"The dispute with respect to the funds lies between [the management company] and the plaintiff partnerships, not between the partnerships and the [attorney]." *Id.* at 25. *See also Kern v. Freed*, 224 Va. 678, 680-681 (Va. 1983) (finding that plaintiff appliance store failed to state an unjust enrichment claim against defendant, who was not unjustly enriched where he retained appliances for which he had paid pursuant to contracts with the home construction company and interior designer). The same is true here – the dispute with respect to the funds that JLL seeks is between Opal and JLL, not between Cypress and JLL.

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint against Cypress in its entirety.

Dated: May 22, 2026

Respectfully Submitted,

*/s/ William F. Coffield*

William F. Coffield (VA Bar No. 31027)
BERLINER CORCORAN & ROWE LLP
1101 17th Street NW, Suite 1100
Washington, DC 20036
Phone: (703) 608-5975
wcoffield@bcrlaw.com

*Counsel for Defendant*
*Cypress International, Inc.*